E. W. Johnson v. The State.

No. 187.    Decided December 1, 1909.

**Swindling—Insufficiency of Indictment—Promissory Note.**

See opinion for an indictment charging the offense of swindling in obtaining a promissory note, which is held to be insufficient.

Appeal from the District Court of Haskell. Tried below before the Hon. Cullen C. Higgins.

Appeal from a conviction of swindling; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Parker & Parker,* for appellant.—Cited cases in opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of swindling and his punishment assessed at five years confinement in the penitentiary.

The charging part of the indictment is as follows: ". . . did then and there with wilful design to receive benefit of him, the said E. W. Johnson, and to cause injury to one J. M. Ferrell, request and solicit the said J. M. Ferrell, to sign as drawer, a certain promissory note in words and figures following, to wit:

"$250.00                                    Haskell, Texas, Aug. 31, 1907.

Thirty days after date for value received, I, we, or either of us, promise to pay to the order of the Haskell National Bank Two Hundred, Fifty & No/100 Dollars, with exchange, at their banking house in Haskell, Texas, .......... with 10 percent interest per annum from maturity ........ until paid. And in the event default is made in the payment of this note at maturity, and it is placed in the hands of an attorney for collection, or suit is brought on the same, then an additional amount of 10 percent on the principal and interest of this note shall be added to the same as collection fees. The makers and endorsers, severally, waive presentment for payment, protest and notice of protest, and the bringing of suit at the first term of Court upon non-payment of this note after maturity, and also

consent that time of payment may be extended without notice thereof, whether the same is done with or without consideration.

E. W. Johnson.'

. . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . .

Due . . . . . . . . . . . . . . . . . . . . . .

and that J. M. Ferrell so as above requested and solicited, did then and there sign his name as drawer on said note, and as an inducement for him, the said J. M. Ferrell, to sign his name as aforesaid on the note, he, the said E. W. Johnson, did then and there falsely and deceitfully pretend and fraudulently represent to him, the said J. M. Ferrell, that his, the said E. W. Johnson's, wife was sick at Stamford, and that he had to get away from there, and that he had decided to move to Haskell, and that he had come to Haskell to rent' a place, but that since coming to Haskell he had decided to buy a place instead of renting one, as rents were too high, and that he had found a house in East Haskell which he considered a bargain, that said house was a new four-room house, and four lots went with it the purchase price of which was one thousand dollars, that he had seven hundred and fifty dollars to pay on said place, and lacked two hundred and fifty dollars to pay on said place, and lacked two hundred and fifty dollars more which he wanted to borrow, that if he, the said J. M. Ferrell, would assist him in borrowing the said two hundred and fifty dollars by going on his note, he would close out the deal and purchase said house and lot at once as he was very anxious to get his wife away from Stamford and move to Haskell the following week, that he would have no trouble in paying the two hundred and fifty dollars, as he had just received that day from the postoffice in Haskell a letter from his partner at Stamford informing him, the said E. W. Johnson, that his partner had just sold a big tract of land in Jones County which he and his partner owned jointly, of which he was to get one-half of the proceeds of said sale of said land, and that in a few days as soon as the title could be examined he would have the money he needed and would be in no tight for money and could pay off and discharge said note, but that his trade here in Haskell for the house and lot would not wait, as he, the said E. W. Johnson, would have to make the trade now or not at all, that the man from whom he was going to buy said house and lot had to have the cash in full or the trade would not go through; that as soon as he got the money on his land deal he intended to and would pay off and discharge said note in full.

"Whereas, in truth and in fact, the said E. W. Johnson did not make a deal to purchase the house and four lots in the said town of Haskell, Texas, nor any house and lots at all, nor did he make

a deal for any house and lots in said town of Haskell, Texas, nor did the said E. W. Johnson then and there have and own jointly with his partner a large tract of land in Jones County which had been sold and of which proceeds he, the said E. W. Johnson, would get one-half. And the said E. W. Johnson well knew that said pretense and pretenses and representations to be false, deceitful and fraudulent, by means of which said false, deceitful and fraudulent pretense, pretenses and representations, so made to the said J. M. Ferrell, he, the said E. W. Johnson did then and there fraudulently and with wilful design to cause an injury to said J. M. Ferrell, procure then and there the signature as drawer on said note, of the said J. M. Ferrell, by and from him the said J. M. Ferrell, to and upon the said note, and the said E. W. Johnson then and there, by the false, deceitful and fraudulent pretense, pretenses and representations, so made to the said J. M. Ferrell, did acquire from the said J. M. Ferrell the said note so by him signed as aforesaid, the same being an instrument of writing conveying and securing a valuable right of the value of two hundred and fifty dollars, with the intent to appropriate the same to the use and benefit of him, the said E. W. Johnson, and with the wilful design to receive the benefit of the same and to cause an injury to him, the said J. M. Ferrell, and afterwards, to wit: after the said note became due and payable according to the tenor thereof, he, the said J. M. Ferrell, by reason of his said signature thereon, as aforesaid, was obliged to pay the amount thereof, and did pay the same, to wit: the sum of two hundred and fifty dollars, to his great injury. Against the peace and dignity of the State."

Appellant insists the indictment is defective because it fails to show that the title to the note in question was ever in J. M. Ferrell, and that the said J. M. Ferrell did not and could not part with the title to the same; that the said indictment fails to show that Ferrell owned the note in question, or that same was ever in his possession, and fails to allege that defendant acquired either the title or possession of same from him or from anyone else, or that same was delivered to defendant by him, or that same was delivered to the payee or to anyone else. That the indictment does not allege ownership or possession of the note in anyone, nor does it negative the fact that both title and possession were in defendant. That the indictment shows the note to have been jointly executed by defendant and Ferrell. This being true, Ferrell did not own the note, but if he owned any interest in the same (and this must be inferred) it was at most, only a joint interest with defendant, and since the defendant could not, under the circumstances alleged, acquire his own property, or property which he owned jointly with another, by fraud, it necessarily follows that the indictment is void. Appellant further insists that the indictment does not show that the defendant knew the alleged false representa-

tions to be false when he made them, or that said Ferrell relied on them and believed them to be true, or that he was induced thereby to sign or deliver to defendant the title or possession of said note. To support appellant's contention he cites us to the cases of Curtis v. State, 31 Texas Crim. App., 39; Lutton v. State, 14 Texas Crim. App., 518; Pitts v. State, 5 Texas Crim. App., 122.

We think appellant's contentions are correct. The indictment is defective in not traversing the allegations in the indictment, in the first place, this being a prerequisite to an accusation for swindling, since the party must rely upon the false representations in parting with his property in any instance before there can be a valid prosecution for swindling. Furthermore, the evidence here shows that appellant secured the signature of the prosecuting witness Ferrell to the note, the note to be delivered to the third party, which the indictment shows that Ferrell subsequently paid. This being true, the note did not belong to the prosecuting witness, but appellant merely secured from him a valuable right. If appellant secured the signature of the prosecuting witness by false and fraudulent pretenses, in reference to a pre-existing fact, this would be, as we understand the statute on swindling (Art. 943, Penal Code) destroying and impairing the rights of the party justly entitled to the same, and it is under this provision of the swindling statute that this prosecution, if same could be successfully maintained, must be prosecuted. Now, if the prosecuting witness parted with his property on account of the false and deceitful statement that appellant owned jointly a valuable piece of land that he had sold, and the prosecuting witness relied on this as the reason and cause of signing the note, then this would necessarily impair his rights, and appellant would be subject to prosecution under the swindling statute, but the promise of appellant to invest the money in a house in the town of Haskell would simply be a breach of promise and not a legitimate basis for swindling. We make the latter suggestions in deference to the fact that this case must be tried again; but for the reasons set up by appellant, above copied, the indictment in this case, we hold, is fatally defective, and the judgment is reversed and the prosecution ordered dismissed.

*Reversed and dismissed.*